IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODERICK SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 2254 |
| | ) |
| A-ALERT EXTERMINATING | ) |
| SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

Plaintiff Roderick Sims (Sims) alleges that in August 2012, he applied for a position with Defendant A-Alert Exterminating Services, Inc. (AAE), which is a pest extermination company. Sims contends that in August 2012, he received a call from AAE asking him to come in and interview for a position. Sims claims that on August 30, 2012, he went to AAE for an interview where he was interviewed by Defendant Kevin Connelly (Connelly), who is allegedly part of management at AAE. The next day Sims was allegedly extended a job offer. Sims contends, however, that upon

1

realizing Sims' age and race at his interview, Connelly decided to pay Sims a salary lower than he had previously promised. Sims also contends that in the afternoon on September 4, 2012, he was listening to Connelly "expound upon the history of extermination while sitting at the head of the table," and that "[w]ithout any warning or explanation, [Connelly] reached and grabbed [Sims'] right arm and violently pulled [Sims] across the table." (Compl. Par. 21-22). Sims contends that he was "shocked and scared at [that] point," but was "able to compose[] [himself] and smile[]. . . ." (Compl. Par. 22-23). Sims also contends that after his interview on August 30, 2012, Connelly began making statements to Sims indicating that Sims would be earning less than allegedly promised to Sims before his interview. After working at AAE for approximately a week, AAE allegedly terminated Sims' employment. Sims includes in his complaint a claim alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* (Count I), a claim alleging race discrimination in violation of 42 U.S.C. § 1981 (Count II), breach of contract claims (Count III), a claim alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (Count IV), assault and battery claims (Count V), and intentional infliction of emotional distress (IIED) claims (Count VI). Defendants moved to dismiss the claims in Counts III, V, and VI, and on November 13, 2013, the court granted the motion to dismiss. Defendants now move for summary judgment on the remaining claims in Counts I, II, and IV.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Failure to Respond to Defendants' Statement of Material Facts

On August 8, 2013, the court stated that dispositive motions were to be filed by December 9, 2013, and that responses to dispositive motions were to be filed by January 10, 2014. On December 9, 2014, Defendants filed the instant summary

judgment motion, a statement of material facts, and a notice to a *pro se* litigant consistent with Local Rule 56.2. On November 13, 2013, the court granted Sims' request for additional time to respond to Defendants' motion for summary judgment and gave Sims until January 21, 2014, to respond to Defendants' motion. The deadline for responding to Defendants' motion has passed, and Sims has filed no opposition to Defendants' motion for summary judgment or to Defendants' statement of material facts even after the court gave Sims an extension. Pursuant to Local Rule 56.1, all facts contained in Defendants' statement of material facts are deemed to be undisputed. LR 56.1; *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008)(stating that "a district court has broad discretion to require strict compliance with Local Rule 56.1"). The court also notes that Sims has previously failed to comply with court rules in this case, specifically failing to appear on a Court's noticed status hearing.

II. Race Discrimination Claims

Defendants move for summary judgment on the Title VII and Section 1981 race discrimination claims. A plaintiff seeking to defeat a defendant's motion for summary judgment on a Title VII discrimination claim can proceed under the direct or indirect method of proof. *Morgan v. SVT, LCC*, 724 F.3d 990, 995 (7th Cir. 2013). Under the direct method of proof, a plaintiff must present direct evidence of unlawful discrimination or show a "convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's action." *Dass v.

4

*Chicago Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012)(internal quotations omitted)(quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004)). Under the indirect method of proof, a plaintiff must first establish a *prima facie* case. *Morgan*, 724 F.3d at 995. If the plaintiff establishes a *prima facie* case, "the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action." *Id.* If the employer offers such a reason, "the burden shifts back to the plaintiff to present evidence that, if believed by the trier of fact, would show that the real explanation for the action is discrimination." *Id.* Sims has not pointed to sufficient direct or circumstantial evidence to proceed under the direct method of proof, and thus, Sims may only proceed under the indirect method of proof.

### A. *Prima Facie* Case

Defendants argue that Sims cannot establish a *prima facie* case. To establish a *prima facie* case for a general race discrimination claim, a plaintiff must show: (1) that he "is a member of a protected class," (2) that he met his "employer's legitimate job expectations," (3) that he "suffered an adverse employment action," and (4) that "similarly situated employees outside of the protected class received more favorable treatment." *Morgan*, 724 F.3d at 996 (internal quotations omitted)(quoting *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)).

#### 1. Adverse Employment Action

Defendants argue that Sims has not shown that he suffered an adverse employment action. In the Title VII context, an action by an employer constitutes an adverse employment action if it "materially alter[s] the terms or conditions of employment. . . ." *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012)(internal quotations omitted)(quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993))(stating that "a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"). An adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "not everything that makes an employee unhappy is an actionable adverse action . . . ." *Id.* (quoting *Crady*, 993 F.2d at 136 and *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

Sims contends that he was subjected to an adverse employment action when, according to Sims, he discovered that he would be making less money than Defendants had originally promised. Defendants argue that Sims was paid the standard wage for his position and that he was not given any wage less than he was originally promised. Defendants' statement of material facts confirms that Sims was paid a standard wage for his position. However, regardless of whether the wage level paid to Sims constituted an adverse employment action, Defendants concede that Sims' employment was ultimately terminated. (SF Par. 32). Such termination

6

would suffice as an adverse employment action in the context of a Title VII or Section 1981 claim.

### 2. Similarly-Situated Employees

Defendants argue that Sims has failed to point to a similarly-situated employee outside the protected class who was treated more favorably than Sims. To meet the similarly-situated requirement for a *prima facie* case, "a plaintiff must identify at least one employee who is directly comparable to h[im] in all material respects." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013)(stating that "[t]he proposed comparator need not be identical in every conceivable way, however, and courts must conduct a 'common-sense examination'")(quoting *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Defendants' statement of material facts shows that Sims was paid the standard wages for his position. For example, it is undisputed that Sims was hired as a Pest Control Technician. (SF Par. 11-12). It is also undisputed that the starting rate for Pest Control Technicians at AAE is $11.50 per hour and that "[f]actoring in the potential for overtime compensation, Pest Control Technicians are able to earn between $30,000 and $35,000 per year." (SF Par. 12). Sims has pointed to no evidence showing that he was paid any less than that amount. Sims has not even identified any comparable employees that would constitute similarly-situated employees. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002)(stating that the plaintiff's "failure to offer . . . 'comparables'" in regard to other employees "doom[ed] her Title VII and ADEA

claims"). Nor is there evidence in the record indicating that any non-African-American employees at AAE, with similar experience, were not paid in a more favorable manner. Thus, Sims has failed to satisfy the similarly-situated requirement and has failed to establish a *prima facie* case for his Title VII claim.

### B. Pretext

Defendants also argue that even if Sims had established a *prima facie* case, he has not pointed to sufficient evidence to show that Defendants' legitimate non-discriminatory reasons for their actions were a pretext. To meet the pretext requirement, a plaintiff must show that the defendant's reason given for the employment action was a lie to hide unlawful discrimination. *See Martino v. Western & Southern Financial Group*, 715 F.3d 195, 202 (7th Cir. 2013)(stating that "[p]retext means a lie, specifically a phony reason for some action")(internal quotations omitted)(quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002); *Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002-03 (7th Cir. 2013)(stating that the "focus of the pretext inquiry is whether the proffered reason is a lie" and "whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground")(internal quotations omitted)(quoting in part *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006); *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)(stating that to show pretext, the plaintiff must show the action is based on a "lie—not just an error, oddity, or oversight"); *Bodenstab v. County of Cook*, 569 F.3d

651, 657 (7th Cir. 2009)(stating that for the pretext requirement, a plaintiff must show that "the defendant's explanation is unworthy of credence")(internal quotations omitted)(quoting credence *Filar v. Bd. of Educ. of City of Chicago.*, 526 F.3d 1054, 1063 (7th Cir. 2008).

In the instant action, Sims claims that Defendants decided to pay Sims a lesser wage once they discovered that Sims was African-American. (Compl. Par. 31-32). However, it is undisputed that before Connelly called to interview Sims, Connelly was aware that Sims was African-American. (SF Par. 9). If Connelly truly had an animus against African-Americans then he could have declined to choose Sims for an interview. Instead, the evidence shows that Connelly chose to call Sims for the interview. Connelly's motivation in interviewing and hiring Sims is also established in the record. It is undisputed that Connelly had decided to hire Sims because Connelly "understood that [Sims] lived in one of the buildings that [AAE] serviced, and hoped to hire [Sims] as a way of helping one of the Company's good customers." (SF Par. 8). Thus, the undisputed facts show that Connelly hired Sims for that reason, knowing Sims was African American, and that AAE paid Sims the standard wage for his position. Such facts in no way suggest a hidden animus against Sims because of his race.

The undisputed facts also show that Sims acted unprofessionally, which led to the termination of his employment. It is undisputed that when Sims arrived at work on his first day, he had failed to obtain a copy of his driving record as previously instructed. (SF Par. 17). It is also undisputed that Sims was required to complete a

9

drug screening for his employment and that the clinic performing the screening called Connelly to inform him that Sims was "refusing to provide the clinic with a copy of his photo identification," and "was loud, disruptive, and uncooperative." (SF Par. 19). It is also undisputed that on September 6, 2012, Sims rode along with, Tikayla Ewing-Williams (Ewing-Williams), another AAE employee, as part of Sims' training. (SF Par. 26). After the ride-along, it is undisputed that Sims told "Connelly that he was tired and wanted to go home, even though all he had done was shadow" Ewing-Williams. (SF Par. 28). It is also undisputed that Ewing-Williams later told Connelly that Sims "displayed a negative attitude, and had made rude and inappropriate comments to her about the customers." (SF Par. 31). To the extent that Sims contends that Ewing-Williams was a party to the alleged race discrimination, that would make little sense since it is undisputed that Ewing-Williams herself is African-American. (SF Par. 26).

It is further undisputed that "[b]ased on [Sims'] ongoing uncooperative behavior and bad attitude from the moment he was hired, . . . Connelly decided to terminate [AAE's] employment of [Sims] on September 7, 2012." (SF Par. 32). Whether or not Sims disagrees with Connelly's assessment of Sims' attitude or the wisdom of the decision to terminate Sims' employment is not determinative for the pretext inquiry. *See Bates v. City of Chicago*, 726F.3d 951, 956 (7th Cir. 2013)(stating that "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered")(internal quotations omitted)(quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir.

10

2000)). Thus, Sims has failed to show that the given reason for his termination was a pretext.

Sims has thus failed to establish a *prima facie* case or pretext for his Title VII claim and he likewise has failed to do so for his Section 1981 claim since the same standard is generally applied to such claims. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 n.2 (7th Cir. 2014)(stating that "the analysis for" Title VII and Section 1981 "claims is generally the same under either statute"); *Smiley*, 714 F.3d at 1002 (stating that the Court "generally appl[ies] the same standards to Title VII and section 1981 race discrimination claims at the summary judgment stage"); *Swearnigen-El v. Cook County Sheriff's Dept.* 602 F.3d 852, 860 n.6 (7th Cir. 2010)(stating that "[t]he same requirements for proving discrimination apply to claims under Title VII, § 1981, and § 1983"); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003)(stating that "[a] plaintiff may prove employment discrimination under the ADEA, Title VII, and § 1981, using either the 'direct method' or 'indirect method'"); *Friedel v. City of Madison*, 832 F.2d 965, 971-72 (7th Cir. 1987)(stating that "[w]hen the plaintiff alleges intentional discrimination, . . . it is clear that the same standards in general govern liability under sections 1981, 1983, and Title VII"). Sims has not pointed to sufficient evidence to prevail on his Section 1981 claim. Based on the above, Defendants' motion for summary judgment on the Title VII and Section 1981 claims is granted.

III.  ADEA Claim

Defendants move for summary judgment on the ADEA claim.  As with a Title VII claim, a plaintiff seeking to defeat a defendant's motion for summary judgment on an ADEA claim can proceed under the direct or indirect method of proof. *Andrews v. CBOCS West, Inc.*, 2014 WL 575893 (7th Cir. 2014).  The standard for the direct and indirect methods of proof for ADEA claims mirrors the standard for Title VII claims.  *Id.*  Sims has not pointed to sufficient direct or circumstantial evidence to proceed under the direct method of proof.

In regard to the indirect method of proof, Sims has failed to point to evidence showing that a similarly situated employee outside the protected class was treated more favorably than Sims.  Sims contends that at the relevant time he was forty-four years old, but Sims has failed to identify any younger employees who were similarly situated.  (Compl. Par. 3).  Nor has Sims pointed to evidence that he was treated less favorably than other younger employees.  As indicated above, the undisputed facts show that Sims was paid the standard wage for his position, and that he was fired because of his unprofessional conduct.  Thus, Sims has failed to establish his *prima facie* case for his ADEA claim.

Defendants also argue that even if Sims had established a *prima facie* case, he has not pointed to sufficient evidence to show that Defendants' legitimate non-discriminatory reasons for their actions were a pretext.  Sims has failed to point to any evidence indicating an animus against him because of his age.  In fact, it is

undisputed that over forty percent of AAE's employees are over forty years of age. (SF Par. 13). Thus, Sims has failed to meet the pretext requirement for his ADEA claim as well. Based on the above, Defendants' motion for summary judgment on the ADEA claim is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment on the Title VII, Section 1981, and ADEA claims is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 11, 2014